IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

ASHLEY HALL, )
 )
 Plaintiff, )
 )
 v. ) Case No. 10-3052-CV-S-REL
 )
NATIONAL HEALTHCARE CORP. d/b/a )
SPRINGFIELD REHABILITATION AND )
HEALTHCARE CENTER, )
 )
 Defendant. )

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In her petition,[1] plaintiff alleges one count of sexual harassment in violation of the Missouri Human Rights Act, and one count of retaliation in violation of the Missouri Human Rights Act. Defendant has filed a motion for summary judgment on the grounds that (1) the sexual harassment incidents alleged by plaintiff are not so severe or pervasive as to constitute a hostile work environment, (2) plaintiff cannot prove that her working conditions were so intolerable that she was forced to quit, (3) defendant exercised reasonable care to avoid harassment and eliminate it, (4) plaintiff failed to take advantage of defendant's safeguards, (5) defendant could not have retaliated as it did not know about plaintiff's complaints of sexual harassment, and (6) plaintiff did not suffer an adverse employment action. I find that a genuine issue of material fact exists. Therefore, defendant's motion for summary judgment will be denied.

---

[1] Plaintiff filed a petition in the Circuit Court of Greene County, Missouri; and thereafter the case was removed to federal court.

*I. BACKGROUND*

On January 27, 2010, plaintiff filed a petition against defendant alleging that defendant had engaged in sexual harassment in violation of the Missouri Human Rights Act and constructive discharge in retaliation for her complaints of sexual harassment, also in violation of the Missouri Human Rights Act. Defendant removed the case to federal court on February 12, 2010.

On May 6, 2011, defendant filed a motion for summary judgment. On June 20, 2011, plaintiff filed an amended response in opposition. On July 5, 2011, defendant filed its reply brief.

*II. STANDARD FOR SUMMARY JUDGMENT*

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the non-moving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In determining whether summary

judgment is appropriate, a district court must look at the record and any inferences to be drawn from it in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 248.

*III. HOSTILE WORK ENVIRONMENT*

"Sexual harassment creates a hostile work environment when sexual conduct either creates an intimidating, hostile, or offensive work environment or has the purpose or effect of unreasonably interfering with an individual's work performance." Smith v. Hy-Vee, Inc., 622 F.3d 904, 907 (8th Cir. 2010), quoting Barekman v. City of Republic, 232 S.W.3d 675, 679 (Mo. App. 2007). "[A] plaintiff must show that he or she is a member of a protected group, that there was 'unwelcome harassment,' that there was a causal nexus between the harassment and membership in the protected group, and that the harassment affected a term, condition, or privilege of employment." Watson v. CEVA Logistics U.S., Inc., 619 F.3d at 942; Williams v. ConAgra Poultry Co., 378 F.3d 790, 794 (8th Cir. 2004). To the extent non-supervisory employees are responsible for the harassment, "the plaintiff must also show that the employer knew or should have known about the harassment but failed to take proper action." Smith v. Hy-Vee, Inc., 622 F.3d at 907, citing Mason v. Wal-Mart Stores, Inc., 91 S.W.3d 738, 742 (Mo. App. 2002); Watson v. CEVA Logistics U.S., Inc., 619 F.3d at 942; Williams v. ConAgra. 378 F.3d at 794-95.

When the hostile work environment sexual harassment is perpetrated by a supervisor, the employer is vicariously liable for the harassment unless it demonstrates its entitlement to the Ellerth-Faragher affirmative defense, which is potentially applicable in situations where no tangible employment action is alleged.  Weger v. City of Ladue, 500 F.3d 710, 178 (8th Cir. 2007); Williams v. Mo. Dept. of Mental Health, 407 F.3d 972, 975-76 (8th Cir.), cert. denied, 546 U.S. 1091 (2006) (citing Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 765 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 807-08 (1998)).  The Ellerth-Faragher affirmative defense consists of two necessary elements:  (a) that the employer exercised reasonable care to prevent and promptly correct any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.  Id. at 976 (quoting Faragher, 524 U.S. at 807).

Harassment which is severe or pervasive is "deemed to affect a term, condition, or privilege of employment."  Singletary v. Mo. Department of Corrections, 423 F.3d 886, 892 (8th Cir. 2005).  The standard is a demanding one, and "[s]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" will not suffice.  Watson v. CEVA Logistics U.S., Inc., 619 F.3d at 942; Arraleh v. County of Ramsey,  461 F.3d 967, 979 (8th Cir. 2006).  The discrimination laws are "not designed to purge the workplace of vulgarity."  Nitsche v. CEO of Osage Valley

Electrical Co-Op, 446 F.3d 841, 846 (8th Cir. 2006), citing Duncan v. General Motors Corp., 300 F.3d 928, 934 (8th Cir. 2002). The hostile work environment must be both objectively and subjectively abusive. Woodland v. Joseph T. Ryerson & Son, Inc., 302 F.3d 839, 843 (8th Cir.2002). The inquiry requires a consideration of the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Watson v. CEVA, 619 F.3d at 943; Arraleh v. County of Ramsey, 461 F.3d 967, 979 (8th Cir. 2006). Harassment need not be so extreme that it produces tangible effects on job performance or psychological well-being to be actionable. Id. (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 22 (1993)). "A work environment is shaped by the accumulation of abusive conduct, and the resulting harm cannot be measured by carving it into a series of discrete incidents." Watson v. CEVA, 619 F.3d at 943; Carter v. Chrysler Corp., 173 F.3d 693, 702 (8th Cir. 1999).

The Supreme Court of Missouri has stated that the MHRA's "safeguards are not identical to the federal standards and can offer greater discrimination protection." Daugherty v. City of Maryland Heights, 231 S.W.3d 814, 818–19 (Mo. banc 2007). In particular, that Court noted that the MHRA defines "discrimination" to include "any unfair treatment based on . . . sex . . . as it relates to employment." Id. at 819 (quoting Mo. Rev. Stat.

5

§ 213.010(5)) (emphasis added in Daugherty).  A plaintiff alleging discrimination in violation of the MHRA can avoid summary judgment by showing that her sex was "a contributing factor" -- not a "substantial or determining factor" -- in the challenged decision.  Id. at 819-20; see also Hill v. Ford Motor Company, 277 S.W.3d 659, 664-65 (Mo. banc 2009).  Missouri courts define a "contributing factor" as one "that contributed a share in anything or has a part in producing the effect."  Williams v. Trans States Airlines, Inc., 281 S.W.3d 854, 867 (Mo. App. 2009) (internal quotation marks and citations omitted).

Defendant argues that plaintiff cannot show that the alleged harassment was severe or pervasive.  Defendant picks apart plaintiff's allegations, first mentioning 11 instances but then dismissing the ones that were not reported to Human Resources or some other person in management.  However, because Todd Jones was plaintiff's supervisor, defendant is vicariously liable unless it establishes that it exercised reasonable care to prevent and promptly correct any sexually harassing behavior and plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities.  Whether plaintiff reported each and every incident is not dispositive.

Plaintiff alleges that Jones had pornography on his work computer; he told her he used to be in pornographic movies; he showed her and other employees a video he had made simulating oral sex; other employees talked about the video all day; he referred to plaintiff as a "hot one" when talking to other

6

employees; he put his arm around her and physically pulled her away from co-workers during a company event; while driving plaintiff from a company event, he repeatedly asked her if he could pull over somewhere; he told plaintiff about an old roommate having touched him with the man's penis; he told her he would give her a day off work if she would go on a camping trip with him; he watched her eating an ice cream cone and said, "I like the way you lick that cone, want to lick mine?"; he made comments such as "mine likes it when I rub his head," "mine gets excited and spits," "mine has only one eye," and "mine has hair;" he unzipped his pants and stuck a piece of fur in his crotch; he created a character of plaintiff on a company Wii game and named it "The Beaver."  I conclude that a jury could find this alleged harassment pervasive or severe.  Plaintiff testified in her deposition that these events occurred.  Therefore, a genuine issue of material fact exists as to whether plaintiff can establish an essential element of a hostile work environment claim.

If plaintiff is able to establish her claim, because Jones (the alleged perpetrator of the sexual harassment) was plaintiff's supervisor, defendant is vicariously liable unless it can show that it exercised reasonable care to prevent and promptly correct any sexually harassing behavior, and that plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities.  Plaintiff testified during her deposition that she did not report every incident

because she got the impression management was not taking her seriously.  Administrator Stephanie Grant testified that there is no written document[2] setting out the procedures defendant would follow with respect to an investigation; rather, she would use her experience and education.  She would ask the complainant what happened, how the person feels about working with the alleged harasser, and then would conduct an investigation.  She would interview witnesses and sometimes keep notes of the interviews.  If she determines that the company policy has been violated, she puts something in writing because there will probably be some discipline.  However, sometimes it "becomes a 'he said, she said'" situation.  Ms. Grant testified that after Jones wrote up plaintiff, it took plaintiff off guard and took her off guard too.  Jones did not use a proper write-up form, did not discuss it with Ms. Grant, and did not handle it the way Ms. Grant would have expected him to.  Ms. Grant testified that after she "began to hear that Ashley had a problem with sexual harassment," Ms. Grant talked to people in the department and learned about things Jones was doing that Ms. Grant considered inappropriate.  She did not talk to these people until after plaintiff walked out on her job. With respect to the ice cream cone incident, Ms. Grant testified, "my first take on that is I don't know if he had an ice cream cone in his hand."

---

[2]Defendant argues that plaintiff misrepresented Ms. Grant's testimony on this issue.  However, Ms. Grant did indeed testify that there is not written document setting out the procedures for an investigation.

Defendant's harassment and hostile environment policy states that if a complaint cannot be validated, immediate and appropriate action will be taken to re-orient and re-acquaint all concerned parties with this policy, the importance of compliance and the possible disciplinary consequences for violation. Plaintiff's position is that there is no evidence that defendant took any action to re-orient and re-acquaint Jones with the sexual harassment policy or consequences for its violation.

Based on all of this evidence, I find that a genuine issue of material fact exists as to whether defendant exercised reasonable care to prevent and promptly correct any sexually harassing behavior.

Defendant presents evidence that plaintiff did not report many of the alleged instances of inappropriate behavior; and when plaintiff did report incidents, she waited a significant period of time before making the report. Plaintiff has presented evidence that she attempted to report the incidents but was not taken seriously and therefore believed it was pointless to make further reports. I find that a genuine issue of material fact exists as to whether plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities.

### IV. *CONSTRUCTIVE DISCHARGE*

To prevail on a claim that she was constructively discharged, an employee must show that her employer deliberately created objectively intolerable working conditions with the intention of forcing the employee to resign and that the employee

9

actually resigned as a result of those conditions. <u>Moisant v. Air Midwest, Inc.</u>, 291 F.3d 1028, 1032 (8th Cir. 2002); <u>Jackson v. Arkansas Department of Education, Vocational and Technical Education Division</u>, 272 F.3d 1020, 1026 (8th Cir. 2001), <u>cert</u>. <u>denied</u>, 536 U.S. 908 (2002); <u>Summit v. S-B Power Tool</u>, 121 F.3d 416, 421 (8th Cir. 1997), <u>cert</u>. <u>denied</u>, 523 U.S. 1004 (1998). Plaintiff alleges in her response:

> After Ms. Hall's complaints and after realizing Ms. Hall was not going to accept his decidedly sexual overtures, Jones, Ms. Hall's supervisor, retaliated in full force. He nagged her about any absences and "wrote her up" for them, even though she had not had enough to justify a "write up," . . . . When Ms. Hall had to take time off, she knew she would pay for it, with not only remarks and sour looks, but threats from Jones. And he began a series of acts to disrupt Ms. Hall's every working day, like suddenly ordering her not to have lunch with her husband in the activities room or to even talk to her husband in the hallways and refusing to let her lock her purse up. . . .
>
> . . . Ms. Hall . . . did have, among other things, every moment she needed off scrutinized and had her supervisor attempting to write her up for time off, even when she was entitled to it. The retaliation that Jones visited on Ms. Hall for daring to report him and refusing his advances were both great and petty. . . .

To be actionable, the retaliation must be the result of plaintiff's reporting the sexually hostile work environment. It is questionable as to whether sour looks, a write up, not letting her lock up her purse, and not allowing her to have contact with her husband at work, if true, would amount to intolerable working conditions. However, plaintiff testified that "Totter and Kenny" remarked that Jones treated plaintiff "like shit" before she quit; she testified that although Jones was the one acting inappropriately, she was the one who kept getting in

10

trouble; she testified that she never knew what she was going to walk into. She testified that she tried to tell Ms. Stephanie Grant about what was going on, and Ms. Grant commented, "I think he's a happily married man." Plaintiff testified,"That wasn't helping me. I didn't get anywhere so why go in there when you end of walking out feeling like an idiot."

Considering the evidence in the light most favorable to plaintiff, as I must, I find that a genuine issue of material fact exists as to whether plaintiff's working conditions were intolerable and whether Jones deliberately created the working conditions with the intent of forcing plaintiff to resign.

## V. CONCLUSION

Based on all of the above, I conclude that there are genuine issues of material fact which preclude the granting of summary judgment. Therefore, it is

ORDERED that defendant's motion for summary judgment is denied.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
August 22, 2011